# FIRST CITY COURT OF NEW ORLEANS, PARISH OF ORLEANS

## EVICTIONS DIVISION
### 421 LOYOLA AVE. ROOM 201 NEW ORLEANS, LA 70112
TEL. (504) 407 0400

| | |
|---|---|
| Case Number: | **2019-06114-F** |
| Case Title: | **JB 430 HOLDINGS versus SWAFFORD FAMILY TRUST (GREGORY SWAFF** |
| Trial Date: | **08-12-2019**    Trial Time: **10:00 AM** |
| Judge: | **Veronica Henry**    Section: **C**    Room: **200A** |
| Amount Due: | **$126.50** |
| Eviction Address: | **4734 FRANKLIN AVE   NEW ORLEANS, LA 70122** |

**PLEASE NOTE: THIS TRIAL DATE WILL NOT BE VALID UNTIL PAYMENT IS MADE. PLEASE MAKE YOUR PAYMENT AT THE CASHIER. PAYMENT FOR SERVICE AT CONSTABLES OFFICE IS ALSO REQUIRED.**

2019-06114

# APPLICATION FOR RULE FOR POSSESSION OF PREMISES

## EVICTIONS DIVISION, FIRST CITY COURT OF NEW ORLEANS, PARISH OF ORLEANS
421 LOYOLA AVE. ROOM 201 NEW ORLEANS, LA 70112
TEL. (504) 407 0400

**MUST BE TYPED OR PRINTED**

**Plaintiff: (Landlord or Property Owner)**

_JB 430 Holding_
Full Name

_____
Full Name

_5 Finch Street_
Street Address

_New Orleans, LA   70124_
City, State, Zip

_504- 505 -7010_
Phone

**Defendant: (Tenant being evicted)**

_Swafford family Trst (Gregory Swafford)_
Full Name

_____
Full Name

_____
Full Name

_4734 Franklin Ave 7062_
Street Address (Eviction Address)

New Orleans, LA
City, State, Zip

**Person Filing:**
(Choose One)  ⊗ Same as Plaintiff (Skip to next section)  ○ Owner  ○ Attorney  ⊗ Agent  ○ Other

_Max Perret_
Full Name

_5 Finch Street_
Street Address

_New Orleans, LA, 70124_
City, State, Zip

_504 -505 -7010_
Phone

---

### ADDITIONAL INFORMATION
Need legal help? You may want to call a lawyer right away. If you don't know a lawyer, you may call Lawyer Referral Service at 561-8828. If you qualify, you may be able to get free legal help from New Orleans Legal Assistance at 529-1000. COURT STAFF CANNOT GIVE LEGAL ADVICE. However, you may find legal information on evictions at www.lawhelp.org/la

---

**Is there a written lease in effect?**
○ Yes
⊗ No

## REASON(S) FOR EVICTION:

☐ **OWNER WANTS POSSESSION DUE TO NON-PAYMENT OF RENT.**
MANDATORY (if the information below is not provided, the Rule For Possession may be <u>dismissed</u>).
Rent Amount: $_____ per_____. Number of rent period(s) owed: _____.
Amount Owed: $_____ Date Beginning: _____ Date Ending: _____.
Court Fees Owed: $_____.

☒ **DEFENDANT VIOLATED LEASE PROVISION(S) OTHER THAN PAYING RENT.**
Please provide specific provision and explain (2 copies of lease must be provided and attached):
_Sold in Civil Sheriff Auction. (Breckure)  . Owner wants_
_peaceful occupancy pursuant_
_to Sale._

Form 1013 5M (Rev. 4/06)

# JUDGMENT

No. **P-** 2019-06114-F

JB 430 HOLDINGS

Versus
SWAFFORD FAMILY TRUST
(GREGORY SWAFFORD)

FIRST CITY COURT OF THE CITY
OF NEW ORLEANS
421 LOYOLA AVENUE - ROOM 201
NEW ORLEANS, LA 70112

## RULE ABSOLUTE

### SECTION " B "

This cause came on this day for trial.

Present:   Plaintiff, Max Perret

Defendant, present / absent

When, after hearing the law and evidence, the Court considering the law

and evidence to be in favor of plaintiff-in-rule and against defendant-in-rule, for

the reasons orally assigned:

It is ordered, adjudged and decreed that the rule herein taken be made

absolute, and accordingly, that there be judgment in favor of _____

JB 430 HOLDINGS

plaintiff-in-rule, and against_____ SWAFFORD FAMILY TRUST (GREGORY

defendant-in-rule and occupants, condemning said defendants to vacate the

premises No. 4734 FRANKLIN AVE

NEW ORLEANS, LA 70122

**FIRST CITY COURT FOR THE PARISH OF ORLEANS**

NO. 2019-06114                **STATE OF LOUISIANA**                **SECTION B**

**JB 430 HOLDINGS LLC**

**VERSUS**

**GREGORY SWAFFORD FAMILY TRUST**

FILED: _____              _____
                                             **DEPUTY CLERK**

**ORDER**

Considering the foregoing Motion to Enroll as Additional Counsel of Record,

IT IS HEREBY ORDERED that name of Gregory Swafford be entered into the record of this court as additional counsel for the defendant Gregory Swafford Family Trust in the above titled and numbered cause.

New Orleans, Louisiana this 28th day of August, 2019.

_____
**Honorable Veronica Henry**

**FIRST CITY COURT FOR THE PARISH OF ORLEANS**

NO. 2019-06114          **STATE OF LOUISIANA          SECTION B**

**JB 430 HOLDINGS LLC**

**VERSUS**

**GREGORY SWAFFORD FAMILY TRUST**

FILED: _____

          **DEPUTY CLERK**

### MOTION AND ORDER TO ENROLL AS ADDITIONAL COUNSEL OF RECORD

NOW INTO COURT, through undersigned counsel comes defendant Gregory Swafford Family Trust, who moves this court to allow Gregory Swafford to enroll as additional counsel of record for the defendant in this matter.

Respectfully Submitted,

Gregory Swafford LSBA 22165
4734 Franklin Avenue
New Orleans, Louisiana 70122
(504) 638-2019

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has this 28th day of August, 2019 been sent to counsel of record by placing same in the U.S. mail properly addressed and postage prepaid.

Gregory Swafford

## FIRST CITY COURT FOR THE PARISH OF ORLEANS

NO. 2019-06114        **STATE OF LOUISIANA**        **SECTION B**

### JB 430 HOLDINGS LLC

### VERSUS

### GREGORY SWAFFORD FAMILY TRUST

FILED: _____       _____
                                  **DEPUTY CLERK**

### MEMORANDA IN SUPPORT OF MOTION FOR NEW TRIAL

#### Procedural History

This matter came for hearing on July 24, 2019 at request of Gregory Swafford Family
Trust for injunctive relief in Division A, Honorable Ellen Hazeur in which the request for
injunctive relief was denied. The property was sold to JB 430 Holdings LLC on July 25, 2019.
**On the same day, July 25, 2019, Gregory Swafford Family Trust did file a Petition in Suit
to Annul Judicial Sale in the same case and under the same case number as allowed by law,
specifically, CDC 2018-5065, Division A. See Petition Exhibit A.**

JB 430 Holdings LLC filed a Rule for Possession in the First City Court for the Parish of
Orleans. This court granted a rule absolute on August 12, 2019. A Motion for New Trial was
filed on behalf of Gregory Swafford Family Trust on that day and this court did vacate and set
aside the judgment. Hearing was held on August 15, 2019 where this court rendered judgment in
favor of JB 430 Holdings LLC granting it possession and ordering Gregory Swafford Family
Trust to vacate the premises by September 2, 2019.

#### Argument

However, upon questioning by the Court, counsel for Gregory Swafford Family Trust did
inadvertently advise the court that a suit to annul the judicial sale had not been filed, when in fact
the suit was filed in Civil District Court prior to the Rule for Possession and more specifically, at
the date and time of the hearing. **See Hearing Transcript p.9 lines 8-32.** The issue of title to
the immovable property is at dispute and precludes this honorable court from exercising
jurisdiction over the matter. That entire matter, as well as the civil rights violations brought to
the court's attention have been removed to federal court.

La.           La. Code Civil Procedure Art. 4847. Limitations upon jurisdiction
          A. Except as otherwise provided by law, a parish court or city court has no jurisdiction in
          any of the following cases or proceedings:
          **(1) A case involving title to immovable property.**
          (2) A case involving the right to public office or position.

Louisiana law provides for the judicial procedure to be exercised in the event of a judicial sale where the validity of the executory process and sale is challenged. The process requires completion of the sale prior to a demand for possession of the premises. Since the property was adjudicated in district court under a writ of seizure and sale by the Sheriff of Orleans Parish. The demand procedure mandates that the execution of the possession be performed by the Sheriff after completion of the sale and issuance of a writ of possession by the Clerk of the district court where the process was initiated. In this case, that process was initiated in the district court. The First City Court Constable has no jurisdiction to execute an eviction as jurisdiction does not lie in the First City Court. JB 430 Holdings LLC is attempting to unlawfully circumvent the judicial process prescribed by statute. The jurisdictional authority of this court does not encompass matters where ownership or title to immovable property is contested. The Petition in Suit to Annul was timely filed.

§43

LSA R.S. 13:4346 **Failure of occupant to deliver possession to purchaser; writ of possession**

> Whenever a sheriff or constable acting under a writ of fieri facias, seizure and sale, or other order of sale, sells and adjudicates immovable property, and the occupant thereof does not deliver possession thereof on demand to the purchaser after the latter has paid the price of adjudication and has received an act of sale from the sheriff or constable, and due return has been made on the writ or order of sale, the clerk of the court which issued the writ or rendered the order, on the written demand of the purchaser, his agent, or attorney at law, shall issue a writ of possession. This writ shall be addressed to the sheriff or constable, commanding him to put the purchaser in physical possession of the property sold, in the same manner as now provided by law for other writs of possession.

It is abundantly clear that the sale of the property was pursuant to a writ of seizure and sale by the sheriff of Orleans Parish. Gregory Swafford Family Trust has timely filed a suit to annul the judicial sale pursuant to Louisiana jurisprudence and statutory law. Determination as to the validity of the judicial sale must be adjudicated by the district court. Therefore, title to the immovable property is at issue and possession of the property pursuant to the sale is not a matter which can be entertained in this court.

### Conclusion

Mover respectfully requests that a Motion for New Trial be granted and that after due proceeding that the Rule Absolute and Judgment of Eviction be set aside.

Respectfully Submitted,

**FIRST CITY COURT FOR THE PARISH OF ORLEANS**

NO. 2019-06114                 **STATE OF LOUISIANA**                 **SECTION B**

**JB 430 HOLDINGS LLC**

**VERSUS**

**GREGORY SWAFFORD FAMILY TRUST**

FILED: _____          _____

**DEPUTY CLERK**

## MOTION FOR NEW TRIAL

On motion of Gregory Swafford family Trust, through undersigned counsel, on suggesting to the court that a new trial be granted in this matter, for the following reasons: that this court lacks jurisdiction over the subject matter based upon La. Code Civ. Proc. Art. 4847 as a suit to annul judicial sale was filed and pending prior to and at the hearing.

It is ordered that JB 430 Holdings LLC show cause on the ____ day of _____, 2019 at ___ a.m/p.m. why Gregory Swafford Family Trust should not be granted a new trial , as prayed for.

Order signed at New Orleans, Louisiana on the ____ day of _____, 2019.

Respectfully Submitted,

_____
Gregory Swafford LSBN 22165
4734 Franklin Avenue
New Orleans, Louisiana 70122
(504) 638-2019

Please Serve:
JB 430 HOLDINGS LLC
THROUGH ITS ATTORNEY OF RECORD
3838 N. CAUSEWAY BLVD
METAIRIE, LA. 70006

RECEIVED
FIRST CITY COURT
NEW ORLEANS

# FIRST CITY COURT OF THE CITY OF NEW ORLEANS SEP 2 02

## STATE OF LOUISIANA

NO.: 2019-06114                                               DIV.: "___"

### JB 430 HOLDINGS

### VERSUS

### SWAFFORD FAMILY TRUST (GREGORY SWAFFORD)

FILED: _____ **DEPUTY CLERK** _____

## JUDGMENT

This matter came before the Court for hearing on Thursday, August 16, 2019  Present at the hearing were:

- C. Michael Pfister, counsel for Plaintiff, JB 430 Holdings; and

- Henry Klein, as counsel for Defendant, Swafford Family Trust (Gregory Swafford).

Before the Court was a Motion for New Trial filed by the Defendants. Based upon the allegations, the Court GRANTED the Motion for New Trial and conducted a denovo review of the evidence.

The Court GRANTED Plaintiff's Rule of Possession for the reasons orally assigned in open court. The Court further ruled that the Defendant has until September 3, 2019 to vacate the premises. This Judgment of Possession shall become absolute and executory on September 3, 2019.

Defendant's Motion for Sanctions filed on August 15, 2019, was DENIED for the reasons orally assigned in open court.

Judgment rendered in open court and signed in New Orleans, Louisiana this 23rd day of August 2019

Respectfully submitted:

**DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, WEINSTOCK & BOGART**


_____

C. MICHAEL PFISTER, Esq. (#14317)
3838 N. Causeway Boulevard, Suite 2900
Metairle, LA 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
Email: mpfister@duplass.com
*Counsel for Plaintiff, JB 430 Holdings*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all parties
and known counsel of record via email, facsimile and/or by depositing same in the U.S. Postal
Service Mail, postage prepaid and properly addressed this 27th day of August 2019.


_____

C. MICHAEL PFISTER, Esq. (#14317)

FIRST CITY COURT OF THE CITY OF NEW ORLEANS

STATE OF LOUISIANA

NO.: 2019-06114                                          DIV.: "F"

JB 430 HOLDINGS

VERSUS

SWAFFORD FAMILY TRUST (GREGORY SWAFFORD)

FILED: _____        _____
                                         DEPUTY CLERK

ORDER

Considering the foregoing Motion to Enroll Counsel;

**IT IS HEREBY ORDERED** that C. Michael Pfister be enrolled as counsel for JB 430

Holdings, in the above-entitled matter.

New Orleans, Louisiana, this ___ day of _____, 2019.


_____
DISTRICT JUDGE

FIRST CITY COURT OF THE CITY OF NEW ORLEANS

STATE OF LOUISIANA

NO.: 2019-06114                                                    DIV.: "B"

JB 430 HOLDINGS

VERSUS

SWAFFORD FAMILY TRUST (GREGORY SWAFFORD)

FILED: _____        _____
                                                    DEPUTY CLERK

## MOTION TO ENROLL AS COUNSEL OF RECORD

NOW INTO COURT, through undersigned counsel, come JB 430 Holdings, who suggest to this Honorable Court that they wish to enroll C. MICHAEL PFISTER of the law firm of DUPLASS, ZWAIN, BOURGEOIS, PFISTER, WEINSTOCK & BOGART, as counsel of record in the above entitled and numbered cause.

RESPECTFULLY SUBMITTED:

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER, WEINSTOCK & BOGART

C. MICHAEL PFISTER (#14317)
3838 N. Causeway Boulevard, Suite 2900
Metairie, LA 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all parties and known counsel of record via email and/or facsimile and/or by depositing same in the United States mail, postage prepaid and properly addressed this _____ day of August, 2019.

FIRST CITY COURT
NEW ORLEANS
EVICTIONS
RECEIVED

2019 AUG 15  P 1: 19

**FIRST CITY COURT OF THE CITY OF NEW ORLEANS**

421 LOYOLA AVENUE

NEW ORLEANS, LOUISIANA 70112

P- 2019-06114-F

JB 430 HOLDINGS

*versus*

SWAFFORD FAMILY TRUST

FILED:_____          _____
                                         DEPUTY CLERK

## MOTION FOR THE IMPOSITION OF SEVERE SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY TO INSURE THE INTEGRITY OF ITS PROCESS PURSUANT TO *CHAMBERS V. NASCO*, 501 U.S. 42 (1991)

On a multiplicity of occasions in the case at bar, one Max Perrett, under the guise of JB 430 Holdings, has used the valuable resources of this Court to abuse the judicial process, advance his own sinister agenda, and combine with others to violate the constitutional rights of GREGORY SWAFFORD and thereby defile this Honorable Court.   We live in a society which is increasingly mocking the law and abusing a system of justice which is becoming an illusion  —  a mirage.

In *Offutt v. United States*, 348 U.S. 11 (1954), Mr. Justice Felix FRANKFURTER makes a statement that is an endangered quality today:

*"Justice must satisfy the appearance of Justice."*

By any measure, Max Perret has committed fraud upon this Court.   He knew full-well he didn't own SWAFFORD's house and home.   He knew full-well he was lying to this Court and using this Court as weapon of intimidation.   For the totality of circumstances, we request that the Court order his deposition and then hold what we reference as a NASCO motion and impose severe sanctions.

At U.S. 43, the High Court made the observation that:

> "It has long been understood that 'certain implied powers must necessarily result to our Courts of Justice from the nature of their institution'....For this reason, Courts of Justice are universally acknowledged to be vested by their very creation, with power to impose silence, respect and decorum in their presence, **and submission to their lawful mandates.**

*Glass v. Hartford Empire*, 322 U.S. 238 (1944):

> "...tampering with the administration of justice involves more than an injury to a single litigant. It is a wrong **against the institutions set up to protect and safeguard the public.**"

From yesteryear — when obedience to the law seems to have been much more sacred than today, we quote from the Supreme Court decision in *Universal Oil v. Root*, 328 U.S. 575 (1946), at 580:

> "...if a Court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party."

This Court must not let the opportunity to introduce litigants who appear before Your Honor to a disappearing concept called

### INTEGRITY

In the exercise of its inherent power to demand respect to this Court's lawful mandates, the SWAFFORD FAMILY TRUST respectfully requests the following:

1. Submission by Perret to deposition testimony with complete disclosure of all persons, police officers, confederates and aiders and abettors to what has been done to the members of the SWAFFORD FAMILY TRUST;

2. Disclosure of all instances where Perret has used this or any other court to intimidate property owners or others as he boasted on July 25 "...we do this all the time, so you better leave now..."

3. Payment of $10,000 in penalties to the system and to cover attorney's fees to undersigned counsel.

## WE LIVE IN A SOCIETY WHERE DISREGARD, DISRESPECT AND DISAVOWAL OF THE LAW IS BECOMING INCREASINGLY COMMONPLACE

Severe sanctions must be imposed.

Respectfully submitted,

Henry L. Klein (7440)
844 Baronne Street

### XIII.   THE WORDS OF THE FOURTH AMENDMENT

47.   To appreciate the *absurdity* of 12 to 14 policemen wearing bullet-proof vests with guns and tasers and handcuffs at the ready, the easiest thing to do is to read the words our founding fathers used:

> "THE RIGHT OF THE PEOPLE TO BE SECURE IN THEIR PERSONS, HOUSES, PAPERS AND EFFECTS AGAINST UNREASONABLE SEARCHES AND SEIZURES SHALL NOT BE VIOLATED, AND NO WARRANTS SHALL ISSUE, BUT ON PROBABLE CAUSE, SUPPORTED BY OATH OR AFFIRMATION AND PARTICULARLY DESCRIBING THE PLACE TO BE SEARCHED, AND THE PERSONS OR THINGS TO BE SEIZED."

### XIV.   DAMAGES

48.   SWAFFORD seeks compensatory, emotional and punitive damages as may be appropriate at trial.

### XV.   TRIAL BY JURY

49.   SWAFFORD is entitled to and prays for a trial by jury as to all legal rights and claims.

Respectfully submitted,

/s/   *Henry L. Klein*
Henry L. Klein (LA 7440)
844 Baronne Street
New Orleans, LA 70113
504-301-3027

## XII.   THE RECEIPT

46.    On July 29, 2019, the day of the SWAT-like raid on SWAFFORD's house
and home, the police told SWAFFORD that they saw "...full-proof..." that PERRET
owned the house in the form of a "...receipt for payment..." which he showed the police
with his driver's license at 906 Toulouse (a door that doesn't open):



Orleans Parish Sheriff's Office
Marlin N. Gusman
Sheriff of the Parish of Orleans
Civil Division
421 Loyola Avenue
Suite 403
New Orleans, LA 70112
Phone: (504) 523-6143   Fax: (504) 525-4912

**Payment Receipt**

nent made by:   JB 430 HOLDINGS, LLC.
906 TOULOUSE ST
NEW ORLEANS LA 70112

| | |
|---|---|
| Payment Date: | 7/26/2019 |
| Payment Type: | Check |
| Check Number: | 159030 |
| Receipt Number: | 36266 |
| Payment Amount: | 252,100.00 |

| ff # | Docket # | Title | Amount |
|---|---|---|---|
| r18-5085 | 2018-5085 | GRAYSTAR MORTGAGE, L.L.C.
vs.
GREGORY SWAFFORD AS TRUSTEE FOR THE GREGORY SWAFFORD FAMILY
TRUST | 252,100.00 |

## XI.   THE BREAK-IN

45.   SWAFFORD closes the pleadings aspect of this case with the following evidence of excessive force, unnecessary violations of his constitutionally-protected right to privacy by rogue policemen and deliberate indifference to SWAFFORD's pride in his house and home



pursuant to 28 U.S.C. § 1331, the court can and should exercise Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367 and SWAFFORD should be allowed to supplement and amend this Removal Complaint to add additional causes of action.

43.     SWAFFORD specifically avers that Graystar violated laws and regulations as set forth in his pleadings in the Civil District Court prior to the sheriff's sale and the events which violated SWAFFORD's civil and constitutional rights.

## X.  DEFENDANTS AND CO-CONSPIRATORS

44.     On information and belief, SWAFFORD avers that the following persons and/or entities conspired with JB 430 Holdings, LLC and are liable pursuant to 42 U.S.C. § 1985(2) and § 1985(3):

- ❑    Max Chandler Perret, as a lead instigator of the violations at issue, and a person engaging in threats and intimidation and in conspiring with others to violate SWAFFORD's civil rights;

- ❑    Max Perret's unknown companion in the violations, as a co-conspirator disguised as a law enforcement person and a person engaging in threats and intimidation;

- ❑    Jessica Borne, listed as a member of JB 430 Holdings, LLC, allegedly located at 906 Toulouse, New Orleans, LA 70112 — a door that does _not_ open — at an address as to which possible wrongful business takes place; further, Jessica Borne apparently does not live at 906 Toulouse but at 430 Dorrington Boulevard, Metairie Louisiana 70005, suggesting that she has an interest in or controls JB **430** Holdings, the alleged high bidder for the property at issue;

- ❑    Persons or entities at Telephone Number 504-505-1010, listed by JB 430 Holdings as " a contact number " for the

challenged as to the authority for taking actions in violation of the 4th Amendment or the result of deliberate indifference of SWAFFORD's civil rights.

❑ It took seconds for PERRET to flash a *receipt* of his alleged payment to the sheriff, yet it took two hours of unconstitutional interrogation and deprivation before the officers in charge concluded that it was a *civil* matter; only failure to train or supervise can result in an officer making the wrong decision. *Walker v. City of New York*, 974 F.2d 293 (2nd Cir., 1992) or "...deliberate indifference..." by policymakers.

❑ On July 29, 2019, NOPD investigating officers Shackford and Stringer were faced with a *routine* assessment of the facts apparently reported by Max PERRET; NOPD policy requires the approval of a Commander prior to entry for purposes of a search in the absence of a warrant or *legitimate* "...exigent circumstances...": Officers Shackford and Stringer failed to get authority from a commanding officer to enter the premises at 4734 Franklin Avenue by crashing in the back door or in any other manner.

❑ It does not appear that NOPD has a policy on what constitutes the elusive term "...exigent circumstances..." or that the NOPD adequately trains its officers to understand the difference between a civil and criminal matter that can justify abandonment of 4th Amendment protections.

❑ The "...wrong choice..." by Shackford and Stringer to break into the premises at 4734 Franklin Avenue without a warrant or probable cause was no coincidence given the speed with which PERRET and his companion hid their

38.    SWAFFORD avers that JB 430 Holdings LLC, the entity which allegedly purchased the property at the sheriff's, acted under **disguised** "...color of law..." by their actions and the delivery of the five-day notice to vacate (a state function) for the purposes of effecting an eviction by threat and intimidation.

39.    SWAFFORD further avers that a *routine response* to a person mistakenly thinking he had rights of *immediate* ownership as the highest bidder at an auction held three hours prior should *never* have triggered a "...SWAT TEAM..." invasion of private property.

40.    SWAFFORD further avers that the *parroting* of the term "...exigent circumstances..." was a response policymakers at the City and the Police Department must have told its policemen to use in order to avoid manifest violations of 4th Amendment principles.

### VIII. MONELL CONSIDERATIONS

41.    SWAFFORD avers that the considerations set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) have been met in the case at bar in at least the following ways and means with specificity as to warrant-less searches, seizures and arrests:

❑    The Police Superintendent and City of New Orleans knew "...or were reckless in not knowing..." that NOPD officers are faced daily with decisions regarding whether circumstances exist which permit entry by officers into premises under the limitations of the 4th Amendment.

❑    The circumstances under which a police officer may enter into a citizen's premises within the context of constitutional limitations imposed by the 4th Amendment

14.   PERRET and his armed companion, who had a law-enforcement phrase on his bullet-proof vest, then announced that SWAFFORD had five days to vacate the property and that "...we will be back on Tuesday and fully expect to take occupancy..."

15.   Shortly after 5:00 p.m. on Monday, July 29, 2019 — one day prior to the threatened return — PERRET and his companion arrived at 4734 Franklin Avenue, _both_ wearing bullet-proof vests _and_ brandishing semi-automatic hand-guns, knocking loudly at the door and front windows until SWAFFORD's son, Nigel, responded, bruskly asking "...do you know Gregory Swafford...?"

16.   When Nigel refused to respond and closed the front door, PERRET and his companion removed the bullet-proof vests and hand-guns and left them in their car, portending the _imminent_ arrival of the New Orleans Police.

17.   At approximately 5:45 p.m. SWAFFORD arrived, finding find several NOPD squad cars with lights flashing and police wearing bullet-proof vests surrounding his house




34.     42 U.S.C. § 1985(2) provides, in pertinent part, that a party injured or deprived by a conspiracy described therein may have an action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators, as follows:

> **§ 1985. Conspiracy to interfere with civil rights**
>
> **(2) Obstructing justice; intimidating a party...**
>
> "...if two or more persons conspire for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course of justice in any State....with the intent to deny any citizen of the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person....to the equal protection of the laws....the party so injured shall have [an action for recovery of damages]..."
>
> **(3) Depriving a person of rights or privileges**
>
> "If two or more persons in any State....conspire or go in disguise....on the premises of another, for the purpose of depriving, either directly or indirectly, any person of the equal protection of the laws or of equal privileges or immunities under the laws....shall have [an action for recovery of damages]..."

35.     SWAFFORD avers that PERRET and others in concert, including named and unnamed co-conspirators, conspired "...in disguise..." to violate his civil rights.

36.     42 U.S.C. § 1988(b) provides for the award of reasonable attorney's fees incurred in the civil prosecution of civil rights violations.

## VII.   ADDITIONAL ALLEGATIONS

29.    SWAFFORD avers that the inference that the series of events was orchestrated in concert with PERRET to violate his civil rights is *irresistible* .

30.    SWAFFORD avers that the actions by the "...state actors..." and private actors in concert violated statutes against Obstruction of Justice as set forth at 42 U.S.C. § 1985(2) in the form and substance of:

> "...two or more persons conspir[ing] for the purpose of impeding, hindering, obstructing or defeating, in any manner, the due course of justice in any State or Territory, with the intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

31.    SWAFFORD avers that, at all times prior to and after the July 25, 2019 sheriff's sale, he was in the process of protecting his property rights, including the right of recession with the intent to repay Graystar all monies *legally* due.

32.    At all pertinent times, SWAFFORD acted in good faith and had made tentative arrangements to extinguish the *lawful* debt, but could not obtain a valid payoff from Graystar other than being told to read the writ and pay all items thereunder.

## VI.  APPLICABLE CIVIL RIGHTS VIOLATIONS

33.    42 U.S.C. § 1983 provides, in pertinent part, as follows:

### § 1983. Civil action for deprivation of rights

> "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State....causes to be subjected any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured

## IV.   *PAYTON v. NEW YORK*

24.   As it eventuated, SWAFFORD suspected that the use of the term "...exigent circumstances..." was used by the NOPD officers who conducted the illegal activity in obvious concert with PERRET as an effort to escape 4th Amendment liability, *Payton v. New York*, 445 U.S. 573 (1980).

25.   In denouncing the arbitrary use of the illusory phrase or in exhibiting "...deliberate indifference..." to SWAFFORD's civil and property rights, the High Court in *Payton* made the following observation, at 445 U.S. 582:

> "At the core of the 4[th] Amendment, whether in the context of a search or an arrest, is the fundamental concept that any governmental intrusion into an individual's home or expectation of privacy must be strictly circumscribed. To achieve that end, the framers of the amendment interposed the warrant requirement between the public and the police, reflecting their conviction that the decision to enter a dwelling **should not rest with the officer in the field, but with a detached and disinterested magistrate**....By definition, such entries are violations of privacy, the chief evil that the 4th Amendment was designed to deter..."

26.   By 7:03 p.m., when the police on the scene finally conceded that the matter was *civil* in nature, SWAFFORD requested an item number for the police report, which Officer Stringer indicated may not be necessary, but nevertheless assigned a number to the Item as G-40119-19, Exhibit E.

27.   After the police left, SWAFFORD entered the house, where he found that the back door had been smashed in to allow entry and that his upstairs quarters had been rummaged and *illegally* searched.

18.     When SWAFFORD arrived on what appeared to be a major crime scene, SWAFFORD's son Nigel had already been ordered to sit on the front steps and not move; NOPD Officer R. Shackford then ordered SWAFFORD to sit on the front steps by his son and in a menacing voice was told "...not to move..." and that he couldn't enter his own house.

19.     When SWAFFORD asked Shackford if they had breached the property and caused damage, Shackford sarcastically responded "...of course, what to you want me to do, f——g lie...?"

20.     In short order, approximately six or seven NOPD officers exited through the front door, stating emphatically that the property did _not_ belong to SWAFFORD and that SWAFFORD had "...no rights to maintain possession..." a _manifestly_ false claim by PERRET and his companion.

### III.   "...EXIGENT CIRCUMSTANCES...

21.     Throughout the two-hour odyssey, SWAFFORD told the police that this was a _civil matter_ and they had no right to engage in an unlawful search and seizure of his property or in the false detention of SWAFFORD and his son.

22.     _Each_ time SWAFFORD challenged the police, asked for an explanation, or questioned their authority as to why they were, the police officers used the same term, over-and-over again:

### "...exigent circumstances..."

23.     While SWAFFORD and son were detained at the front steps and told emphatically "...not to move...", PERRET and his companion remained on the scene, conferring with police officers who returned to the front steps of the house,

13.    When SWAFFORD opened the door, PERRET and his armed companion announced that "...we are here to take possession, we just bought the house and the locksmith is on the way to change the locks...", adding that "...we do this all the time, so you may as well go..." (or words to that effect), handing SWAFFORD a Five-Day Notice of Eviction which we replicate herein below:

### FIVE (5) Day Notice to Vacate Premises

DATE: 7/25/19

TENANT: _Wisof Oxpark /Swaffords_

ADDRESS: _4734 Franklin Av_ APARTMENT NO.

CITY CODE: _New Orleans_ STATE _LA_ & _70122_ ZIP

You are notified to vacate and deliver to me the premises at the above address listed, Five (5) Days from the service hereof as a result of the following:

~~_____ Non-payment of rent, in advance, in the amount of _____~~
~~For the period beginning _____ and ending _____~~

_X_ The purpose and terms of your occupancy has ceased and the LANDLORD desires the premises for the following reason(s): _lawfull dispaly_
_Purter of Poreclosote Goclen_

If you fail to vacate, the laws of eviction will be enforced.

_____
Landlord
(504) _505 -1010_

to make policies which would have avoided the egregious acts hereinafter more fully
set forth.

5.      SWAFFORD also names Max Perret and all others who have acted in
concert with him and all others who have acted under the disguise of an entity named
JB 430 Holdings, LLC and who have further aided and abetted Perret and his co-
conspirators in the civil rights violations alleged herein.

6.      SWAFFORD further avers that his request for an internal investigation
by the City of New Orleans of the New Orleans Police Department should ferret out
additional wrongdoers relating to the suspected instructions to police officers and
employees to use the phrase "...<u>exigent circumstances</u>..." as a farcical methodology
for avoiding 4th Amendment liability.

7.      SWAFFORD finally reserves the right to supplement his Complaint as
information regarding corrupt police and municipal activities are discovered.

## II.   FACTS SPECIFIC TO CIVIL RIGHTS VIOLATIONS

8.      For a period of time beginning no later than May 22, 2018, SWAFFORD
had been diligently attempting to protect his valuable property as a <u>*pro se*</u> litigant
without success; SWAFFORD avers that his efforts to protect his valuable property
were well-known and resulted in the actions described hereinbelow.

9.      SWAFFORD's fight to protect his property took place in Civil District
Court for the Parish of Orleans in the above-captioned State-Court acton.

10.     Despite his best efforts and because of others, SWAFFORD could not
stop the sheriff's sale of 4734 Franklin Avenue scheduled for July 25, 2019 at noon.

11.     At 12:25 p.m. on July 25, 2019, one Max Perret — who was the highest

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GRAYSTAR MORTGAGE, LLC | * | CIVIL ACTION |
| | * | |
| versus | * | NO. |
| | * | |
| | * | |
| GREGORY SWAFFORD, AS TRUSTEE | * | SECTION |
| FOR THE GREGORY SWAFFORD | * | |
| FAMILY TRUST | * | |
| | * | MAGISTRATE |

************************************************

### VERIFIED NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1446(b)(3)
### AND OTHER BASES PURSUANT TO 42 U.S.C. § 1983
### AND 42 U.S.C. § 1985(2) and § 1985(3)
### AND FOR SUPPLEMENTAL JURISDICTION AGAINST DEFENDANTS
### NAMED AND CO-CONSPIRATORS
### AND FOR COMPENSATORY AND PUNITIVE DAMAGES

1.     Gregory Swafford, as Trustee for the Gregory Swafford Family Trust ("SWAFFORD") hereby NOTICES the removal of the state-court action previously pending in the Civil District Court for the Parish of Orleans, State of Louisiana, Docket 2018-5065, the Honorable Ellen Hazeur presiding ("the State-Court Action").

2.     The State-Court action became removable pursuant to 28 U.S.C. § 1446(b)(3) on July 25, 2019, after a sheriff's sale was conducted to enforce a mortgage held by Graystar Mortgage, LLC as to SWAFFORD's private residence at 4734 Franklin Avenue, New Orleans, Louisiana 70122, valued in excess of $430,000.

### I.   DEFENDANTS NAMED UPON REMOVAL

## ORDER

SWAFFORD FAMILY TRUST (Gregory Swafford)          IS HEREBY GRANTED A

HEARING AND Max Perret                                        SHOW CAUSE

WHY NEW TRIAL SHOULD NOT BE RENDERED OR why a judgment previously

rendered should not be set aside.

New Orleans, Louisiana this _____ day of AUGUST _____, 2019 __.


_____
JUDGE

PLEASE SERVE:
MAX PERRET
5 FINCH ST.
NEW ORLEANS, LA   70122
504-505-1010

FIRST CITY COURT OF THE CITY OF NEW ORLEANS
421 LOYOLA AVENUE - ROOM 201
NEW ORLEANS, LA 70112

CASE NUMBER: **P** 2019-06114-F                    SECTION "    "

JB 430 HOLDINGS
FIRST CITY COURT OF THE CITY OF NEW ORLEANS
Date: 8/12/2019   Amount: $25.00
Receipt: 225033   Section: B
Case No: 2019006114
Filing Type: Motion for New Trial (Eviction)

versus

SWAFFORD FAMILY TRUST (GREGORY SWAFFORD)

2019 AUG 12   P 1:35
FIRST CITY COURT
NEW ORLEANS
EVICTIONS
RECEIVED

_____AUGUST 12, 2019_____                    _____JP_____
FILED                                          DEPUTY CLERK

### MOTION FOR A NEW TRIAL RULE FOR POSSESSION OF PREMISES

Notice is hereby given of a hearing on Motion of SWAFFORD FAMILY TRUST

(GREGORY SWAFFORD)                              , for a new trial in

the above MATTER. JUDGMENT RENDERED ON 12TH                    day of

AUGUST              , 2019 .

If a new trial is granted, it will be conducted immediately thereafter. Therefore,

please bring all of your evidence and have your witnesses available.

HEARING SET _____ day of _____, 20_____, at _____ A.M.

**A NEW TRIAL IS REQUESTED FOR THE FOLLOWING REASONS:**

JB 430 Holdings engaged in Fraud
upon the Court. The ownership is now
before the Federal Court in Docket 19-12170
Exhibit A, Relief - Involuntary Vacature

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

**DOCKET NO. 2018-5065**                                    **SECTION A**

**GRAYSTAR MORTGAGE, LLC**
**VERSUS**
**GREGORY SWAFFORD AS TRUSTEE FOR THE GREGORY**
**SWAFFORD FAMILY TRUST**

**FILED:** _____   _____
                                              **DEPUTY CLERK**

### PETITION IN SUIT TO ANNUL SHERIFF SALE

**NOW INTO COURT,** comes Petitioner, GREGORY SWAFFORD AS TRUSTEE FOR THE GREGORY SWAFFORD FAMILY TRUST who is domiciled in Orleans Parish, Louisiana, and who respectfully represents that:

1.

Made Defendant herein is Graystar Mortgage, LLC.

2.

At all times material herein, Petitioner is the owner of the property at 4734 Franklin Avenue, Square 40, Lots 10, 11 and 12, New Orleans, Louisiana, specifically, Gregory Swafford as Trustee for Gregory Swafford Family Trust.

3.

On or about May 22, 2018, Graystar did file a Petition for Executory Process naming GREGORY SWAFFORD AS TRUSTEE FOR THE GREGORY SWAFFORD FAMILY TRUST as defendant and asserting that it was in default on its mortgage obligation.

4.

At all times material herein, specifically prior to and at the time of the loan transaction, the subject property was the primary residence of Trustee, Gregory Swafford.

5.

Upon information and belief, Petitioner did enter into a written agreement with Graystar Mortgage, LLC to pay interest in the amount of eighteen (18%) per

7.

At all times material herein, the promissory note evidencing the obligation to pay interest at the rate of eighteen (18%) per cent per annum was attached to the Petition for Executory Process.

8.

At all times material herein, Petitioner did make monthly payments to Graystar in the amount of $3,187.50 which consisted of interest only payments charged at the rate of eighteen (18%) per cent per annum from the date of the loan.

9.

Upon information and belief, Graystar Mortgage, LLC was not a licensed lender or supervised financial organization as defined by LSA-R.S. 9:3516(22) and LSA-R.S. 9:3516(33).

10.

At all times material herein, the transaction between Petitioner and Graystar Mortgage, LLC was not an arms-length transaction.

11.

Graystar provided all terms of the transaction as well as all documents executed in the transaction.

12.

At all times material herein, the parties did not agree by written declaration or otherwise that the loan transaction would be considered a consumer loan as defined in LSA-R.S. 9:3516(14).

13.

At all times material herein, Graystar did assert in paragraph XI of its petition that Petitioner was in default under the terms of the promissory note.

14.

At all times material herein, Graystar did assert in paragraph XII that it exercised its right to accelerate and that accrued interest and principal were immediately due in full and that Petitioner had been provided with Notice of Default

16.

At all times material herein, Graystar did not attach evidence of the Notice of Default provided to Petitioner prior to acceleration and filing of the Petition for Executory Process as provided for under the terms of the promissory note.

17.

At all times material herein, the Hand Note did state:

> **Notice of Default**
> **If I do not pay the full amount of the Note or payment on the date it is due, we will be in default. If we are in default, the Note Holder may send me a written notice telling me that if we do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.**

18.

At all times material herein, Plaintiff did not attach authentic evidence of the existence of a matured and demandable debt to the Petition for Executory Process.

19.

At all times material herein, the promissory note did provide that written notice be provided to Petitioner upon default.

20.

At all times material herein, the mortgage provided that Petitioner waived notice of default.

21.

Upon information and belief, a discrepancy existed between the promissory note and mortgage on whether written notice of default was necessary prior to acceleration or whether it was waived by Petitioner.

22.

At all times material herein, and particularly at the time of issuance of the order of executory process, the notary before whom the promissory note and mortgage was executed did not certify on either document that the terms under the promissory note and mortgage varied substantively regarding notice of default

24.

Upon information and belief, the property at 4734 Franklin Avenue was sold at sheriff sale on July 25, 2019.

WHEREFORE, Petitioner prays that after due proceedings are had that there be judgment in favor of Petitioner and against Graystar Mortgage, LLC annulling the sheriff sale of property at 4734 Franklin Avenue, New Orleans, Louisiana which took place on July 25, 2019; and restoring title in Gregory Swafford Family Trust and awarding attorney fees reasonable in the premises and for all general and equitable relief.

Respectfully Submitted,

Gregory Swafford, Pro Se
4734 Franklin Avenue
New Orleans, Louisiana 70122
(504) 638-2019

Please Serve:
Graystar Mortgage, LLC
Through its Atorney of Record
Steve Watts
3925 N. I-10 Service Road West
Metairie, Louisiana 70002

FIRST CITY COURT
NEW ORLEANS

2019 AUG 28   PM 3 36

1                              FIRST CITY COURT
2                             PARISH OF ORLEANS
3                            STATE OF LOUISIANA
4
5
6     JB 430 HOLDINGS
7                                       NO.:2019-06114-F
8     VERSUS
9                                       SEC.:"B"
10    SWAFFORD FAMILY TRUST
      (GREGORY SWAFFORD)
11
12    Transcript of the proceedings taken in the above
13    numbered and entitled cause heard in open court on
14    August 15, 2019, before the Honorable Veronica E.
15    Henry, Judge presiding, Section C.
16                  *       *       *       *       *
17
18
19    APPEARANCES:
20    C. Michael Pfister Jr, REPRESENTING JB 430 HOLDINGS
21    Henry Klein, REPRESENTING THE DEFENDANT
22    Max Perret, ALSO PRESENT                )
23
24
25                                            )
26
27    REPORTED BY:
28    HAROLD M. SPINNER III, RPR, CCR
29    REGISTERED PROFESSIONAL REPORTER
30    CERTIFIED COURT REPORTER
31
32

EXHIBIT B

```
 1   THE COURT:
 2                 All right.  This is Case No.
 3           2019-06114, JB 430 Holdings versus
 4           Swafford Family Trust, Gregory Swafford.
 5                 Counsel, make your appearances.
 6   MR. PFISTER:
 7                 Your Honor, Mike Pfister on behalf of
 8           JB 403 (sic) Holdings, LLC.
 9   THE COURT:
10                 Spell your last name.
11   MR. PFISTER:
12                 P-F-I-S-T-E-R.
13   THE COURT:
14                 Okay.
15   THE REPORTER:
16                 what's your bar number?
17   MR. PFISTER:
18                 14317.
19   MR. KLEIN:
20                 Good afternoon, your Honor,
21           Henry Klein, K-L-E-I-N, on behalf of
22           Swafford Family Trust.  My bar number, you
23           want; 7440.  Thank you.
24   THE COURT:
25                 All right.  This matter came before
26           the court on Monday, August 12th on a Rule
27           For Possession.  There was no appearance
28           made by the Defendant.  And based on the
29           representations and allegations made by
30           the Mover, the Court Granted Judgment in
31           this matter, Rule For Possession for the
32           Plaintiff.
```

1          The same day in the afternoon, a

2     Motion For New Trial was filed. And in

3     the Motion For New Trial, it was

4     represented to the Court that there is an

5     ownership issue relative to the property

6     located at 4734 Franklin Avenue. And the

7     issue was originally before Judge Hazeur

8     in Civil District Court, but has since

9     been removed to Federal Court.

10         A document was attached, a pleading,

11    with the caption of United States District

12    Court. Apparently, it was E-Filed, which

13    is a requirement, I believe, of all

14    pleadings filed in Federal Court. And

15    here we are today on the Motion For New

16    Trial.

17         Now, considering the representations

18    of the Mover on the Motion For New Trial,

19    and what was filed, without the need of

20    any arguments for or against, the Court is

21    inclined to Grant the new Trial. So, I'm

22    going to Vacate the previous Judgment of

23    Possession, and we're going to start anew.

24         All right. So, is there, and since

25    we're starting over, we have the Mover

26    that's going to be presenting its case.

27         Now, apparently, the property was

28    purchased, based upon the representations

29    in this pleading that was filed by

30    Mr. Klein, was purchased -- Was it a tax

31    sale or some other --

32 MR. PFISTER:

| | |
|---|---|
| 1 | Foreclosure. |
| 2 | MR. KLEIN: |
| 3 | If I may, it's a foreclosure that |
| 4 | took place downstairs on July 25. There's |
| 5 | no deed signed by the Sheriff's office. |
| 6 | It's not even close. The property |
| 7 | continues to stay in the possession of |
| 8 | Mr. Swafford and the Trust. And there's |
| 9 | absolutely no basis for anyone saying that |
| 10 | they bought the property because they bid |
| 11 | it in at the Sheriff's sale. A lot of |
| 12 | paperwork has to follow through. And as a |
| 13 | consequence of the manner, that Mr. Perret |
| 14 | went about doing the things that he did, |
| 15 | we filed a removal to Federal Court. It |
| 16 | is now before Judge Jay Zainey; it's |
| 17 | 19-12129 and I don't know that there's |
| 18 | anything for this Court to do. |
| 19 | There is no dispute that the property |
| 20 | belongs to Swafford. And there's no |
| 21 | dispute that until the Sheriff's deed is |
| 22 | executed and recorded. That the status of |
| 23 | the title of it. There's no issue of fact |
| 24 | for your Honor to consider. I just met |
| 25 | Mr. Pfister, and now we have three Jesuit |
| 26 | guys' here in Court. And what I would |
| 27 | like to do, your Honor, is I'd like to |
| 28 | have this Court impose sanctions. I would |
| 29 | like to follow up. I think this was an |
| 30 | outrageous abuse of the legal process. |
| 31 | This man showed up with another fellow in |
| 32 | *bullet-proof vests, I'm told, with guns.* |

```
 1            And then they had a few days later, a
 2            plethora of police that went there and
 3            abused my client.
 4                I would like to make a record, and I
 5            believe that the proper place to seek
 6            sanctions as to this series of events is
 7            in this Court.  We have a separate and
 8            distinct forum for those issues, that will
 9            not be the same as the issues in Federal
10            Court.
11  THE COURT:
12                Okay.  Let me just deal with the last
13            part of what you were saying with respect
14            to the sanctions.  And I did receive a few
15            minutes ago, that was filed today at about
16            1:20, 1:19, a Motion For Imposition Of
17            Severe Sanctions, persaunt to the Court's
18            inherent authority.
19                Now, you all are here, and Mr. Perret
20            was originally here on a Rule For
21            Possession.  I have not found Mr. Perret
22            in contempt for any reason.  The Court to
23            impose sanctions, typically on a Rule For
24            Possession, that's not dealt with unless
25            the Court finds there's been some
26            contempt.
27  MR. KLEIN:
28                I'm asking for it now.
29  THE COURT:
30                I understand.  But what I'm going to
31            say is, I'm not going to award it, because
32            I don't think it's warranted in this
```

```
 1              instance.  What you've alleged here is
 2              similar to what you've alleged in Federal
 3              court, where I think you are -- you have a
 4              plethora, using your term, a plethora of
 5              things you've alleged in your Federal
 6              Court filing, wherein, you know, you're
 7              seeking all sorts of sanctions and
 8              attorney's fees, and the like.  I think
 9              that's where you would get your damages,
10              if what you've alleged is what the Judge
11              agrees to have occurred and those
12              sanctions are warranted.
13                   So, the Court is not inclined to
14              issue any sanctions today regarding this
15              Rule For Possession.
16                   So, let's deal with the issue at
17              hand.
18  MR. PFISTER:
19                   Your Honor, if I may.  I think
20              there's no dispute that the property was
21              purchased, and that it was paid for, and
22              the sale was complete July 25, 2019.
23                   And at that point in time the person
24              who purchases the property from the
25              Sheriff's sale, he is the owner of the
26              property.  And there's no recorded lease.
27              Mr. Swafford doesn't have any rights to
28              posses a piece of property that he no
29              longer owns.  The Federal -- we don't try
30              the Federal Court allegations here in the
31              eviction proceeding --
32  THE COURT:
```

1            No, you don't.

2    MR. PFISTER:

3            But if you read the allegations in

4            the Federal Court lawsuit. It has nothing

5            to do with Title.  It has to do -- in fact

6            if you read the pleadings, the pleadings

7            say that he was unable to maintain

8            possession of his property, and that it

9            was foreclosed upon.

10           So, once the property is sold at

11           Judicial Auction and the price is paid, he

12           becomes the owner of the property.  And at

13           that point in time, Mr. Swafford did not

14           have any right to remain in the property.

15           He's now owned the property for 21 days.

16           The recording of the deed, it takes time

17           for that paperwork to get done, but that

18           doesn't mean he doesn't own the property.

19   MR. KLEIN:

20           I've not seen any authority for that

21           proposition.  The only authority I've ever

22           seen as to foreclosure proceedings is that

23           the foreclosure takes place, and there's a

24           lot of work that has to be done up to the

25           highest bidder, and the Title is given to

26           the highest bidder when the deed is

27           recorded.  I have never seen the

28           proposition that you can go from the

29           ground floor --

30   THE COURT:

31           Mr. Klein, let me ask you this:  When

32           you purchase a house, when you purchase

```
 1                maybe the house that you're in now and you
 2                went to the act of sale, didn't you get
 3                keys to the house?
 4   MR. KLEIN:
 5                No, ma'am.  I first have to get-- I
 6                first have to get a deed.
 7   THE COURT:
 8                I got keys to my house, and I went
 9                straight over there.
10   MR. KLEIN:
11                Well, you're lucky.
12   THE COURT:
13                In both instances, at the Act of
14                Sale.  But be that as it may, I looked
15                through your Federal Court pleading, and
16                you may point me another direction here.
17                What you've indicated throughout this
18                pleading, as I can appreciate it, is that
19                your Civil Rights, or your clients' Civil
20                Rights have been violated by the actions
21                of the police, and Mr. Perret and other
22                parties regarding the manner in which
23                Mr. Perret took hold of the property.  I
24                searched through the pleading and tried to
25                find were the allegations were that he is
26                not the owner of the property.  You speak
27                of, let's see --
28   MR. KLEIN:
29                Well, you don't have to look, your
30                Honor, because I was not dealing with the
31                issue of Title in the 1983 case.  The
32                issue of who holds Title is a matter of
```

1           State law, it's a matter of Stat Law --
2    THE COURT:
3               You don't dispute that Mr. Perret, I
4           believe the name is, Mr. Perret, purchased
5           this at a Sheriff's sale, purchased the
6           property at issue at the Sheriff's sale.
7    MR. KLEIN:
8               Of course I dispute it.  He went to a
9           Sheriff's sale, was the highest bidder,
10          and he brought a check over there.  That
11          is not a purchase.  That is not the
12          purchase of the property.  There are all
13          sorts of things that happen after, for
14          example, there can be an action to set it
15          aside.  You don't own the property.
16   THE COURT:
17              Have any of those types of actions
18          been filed relative to his purchase of the
19          property?  As you mention, an action to
20          set aside, or some sort of --
21   MR. KLEIN:
22              I don't know of any authority that
23          says, That as soon as he brings the money
24          --
25   THE COURT:
26              But my question was: Have any actions
27          been filed to contest the manner in which
28          he purchased the property from the
29          Sheriff?
30   MR. KLEIN:
31              No, you've seen everything that's
32          been filed.

```
 1  THE COURT:
 2                  Okay.
 3  MR. KLEIN:
 4                  The plethora that you spoke of is in
 5          your hands.
 6  THE COURT:
 7                  And in your Federal Court pleading
 8          you mentioned somewhere on Page 9 here, I
 9          have a note here, that Mr. Perret was --
10          or JB 40 Holdings LLC was mistakenly
11          thinking they had the right to immediate
12          ownership once the Sheriff's act to place.
13  MR. KLEIN:
14                  I think that's correct.
15  THE COURT:
16                  And that goes back to what you're
17          arguing relative to whatever the paperwork
18          is that has to go through with the
19          Conveyance Office.
20  MR. KLEIN:
21                  Well, it's got to go to the
22          Conveyance Office.  There's got to be a
23          deed.  The Sheriff's deed, it's is a
24          Pro Se Verbal.
25  THE COURT:
26                  Uh-huh.
27  MR. KLEIN:
28                  It's a Pro Se Verbal.
29  THE COURT:
30                  Uh-huh.
31  MR. KLEIN:
32                  It takes them about twenty or thirty
```

1        days to do it.

2    THE COURT:

3                  Okay.

4    MR. KLEIN:

5                  And when that happens then --

6    THE COURT:

7                  And who's responsible for doing that?

8            Because I know usually it's the --

9    MR. KLEIN:

10                 The Sheriff.

11   THE COURT:

12                 It's the title company normally when

13           you go through that. But in this case,

14           it's the Sheriff? I don't actually know

15           the Sheriff's procedure.

16   MR. KLEIN:

17                 The Sheriff has to take care of it

18           all, there's no title company involved.

19   THE COURT:

20                 All right. All right.

21   MR. KLEIN:

22                 The Sheriff was in the process of

23           doing that when I removed the case.

24   THE COURT:

25                 Okay. There's a process of doing and

26           it hasn't been done to date that's your --

27   MR. KLEIN:

28                 No, it hasn't been done, and it can't

29           be done to date. The Civil District Court

30           has lost jurisdiction over all aspects of

31           the case. Including, the Sheriff taking

32           any steps toward fulfilling the Writ of

```
 1              Seizure that was signed by Judge Hazeur.
 2  THE COURT:
 3              You're saying that the Sheriff can do
 4          nothing now, since it's in Federal Court?
 5  MR. KLEIN:
 6              Absolutely.  Absolutely, nothing.
 7          The Code 40 -- 28 USC 46 --
 8  THE COURT:
 9              Is that the Sheriff's position?
10  MR. KLEIN:
11              The Sheriff takes no position.
12  THE COURT:
13              So the Sheriff has just put this
14          aside?
15  MR. KLEIN:
16              Absolutely.  I've done this before
17          with the Sheriff and he understands, he
18          does not have jurisdiction.
19  THE COURT:
20              The Sheriff is not here.  You haven't
21          brought the Sheriff here, but, you know, I
22          don't know what the Sheriff's procedure is
23          to be quite honest.
24  MR. PFISTER:
25              Your Honor, the foreclosure
26          proceeding that was removed, that case is
27          over once the property is sold and the
28          money changes hands.  I spoke to the
29          attorney who represents the bank in the
30          foreclosure proceeding.  They're not
31          pursuing -- he told me they're not
32          pursuing an Excess Judgment or a
```

```
 1              Deficiency Judgment.  The bank gets paid
 2              and that case is over.
 3   MR. KLEIN:
 4              I know of no authority for that.
 5   MR. PFISTER:
 6              And when you purchase the property
 7              and you pay the money, that's when you
 8              become the owner; and when you're the
 9              highest bidder.  And remember something
10              else, Judge, there was no answer.  They
11              were no affirmative defenses filed to the
12              Petition For Possession.  So, this Federal
13              Court action comes after all of that has
14              already been concluded.  There has been no
15              action to question the validity of the
16              sale.  There's been no -- regardless of
17              when you purchase a piece of property, it
18              takes time for the paperwork to be
19              recorded in the Mortgage office.  That
20              doesn't mean you don't own it.  If that
21              were true, then you couldn't insure it.
22              And because you can't insure something
23              that you can't own.  Once the documents
24              are executed, and you pay the money you
25              become the owner of the property.  That
26              gives you the ability to insure the
27              property in case it catches on fire or
28              something like that.  You don't have to
29              wait, you can't wait sixty days or thirty
30              days, because if you do -- If that's true
31              you can't insure it, and you can't do
32              anything with the property that you've
```

1          already paid money for.

2                  And I think, like your Honor pointed

3          out, you get the keys to the house when

4          you pay the money and you purchase the

5          house.

6   THE COURT:

7                  Sign the papers.

8   MR. PFISTER:

9                  Yes.

10  MR. KLEIN:

11                 Your Honor, I know of no authority

12         for the proposition that a buyer at an

13         auction gets title to the property when

14         the hammer hits on the gavel, or the gavel

15         hits the hammer, or whatever.  There's no

16         authority for that.  Title under the --

17         what we have is the Public Records

18         Doctrine.  Title changes when the Public

19         Records so state.  If you were to do it by

20         my worthy opponent suggests, you would

21         throw away the Public Records' Doctrine.

22                 Insurable interest takes place when

23         you become the deeded owner under the

24         Louisiana Public Record Doctrine.  The

25         public records say when it is -- that

26         title to property changes hands.  That way

27         the whole world can look, but you don't

28         just run over to the house and try to

29         throw the people out.  I know of no law.

30  MR. PFISTER:

31                 Your Honor, we have all of the

32         paperwork that Mr. Perret received,

1            including the receipts for the payments
2            and all of the documents.
3    THE COURT:
4            Let me see what you have.  You can
5            give it to the Clerk.
6    MR. KLEIN:
7            I think I filed, the receipt is in my
8            lawsuit.  That's all he has, just the
9            receipt.
10   THE COURT:
11           Something was filed as an attach, two
12           documents.  You had a picture of a door, I
13           believe, and Sheriff's --
14   MR. KLEIN:
15           Page 13 you have the receipt.
16   THE COURT:
17           With the Driver's License, yeah.
18   MR. KLEIN:
19           Yeah.  The receipt is the only piece
20           of paper that Mr. Perret received, a
21           receipt, that's it.  In fact the receipt
22           doesn't even show the address.  The
23           receipt doesn't show anything other than
24           the 282,000 number.  The Public Records'
25           Doctrine is sacrosanct in Louisiana as
26           actually it is lots of places.  When the
27           Public Records show, by the submission and
28           the filing of a conveyance, in the
29           Conveyance Office, that's when title
30           changes.
31   MR. PFISTER:
32           Judge, if that were the case when you

```
 1              bought your house you were a trespasser
 2              until the company got around to filing the
 3              documents in the Conveyance Office.
 4  MR. KLEIN:
 5              That's not true when you go to an Act
 6              of Sale, the notary records the deed.
 7  THE COURT:
 8              Okay.  Typically when I have these
 9              cases where there's other litigation
10              happening regarding a piece of property,
11              the litigation concerns who the owner is,
12              or contesting the manner in which the
13              property was acquired and somehow making
14              that transfer deficient, but in any case,
15              those actions which are filed in Civil
16              District Court typically question the
17              ownership or question whether a sale has
18              occurred.
19              And those cases from my Court on a
20              rule for possession, typically get Denied
21              and the parties are advised that they need
22              to go upstairs and resolve the disputes
23              relative to ownership or Title to the
24              property because First City Court has no
25              jurisdiction relative to issues of
26              ownership or deciding ownership.
27              In this particular case, what I
28              appreciate is before me, there is no
29              dispute that Mr. Perret, on behalf of
30              JB 430 Holdings paid for the property at
31              issue; paid for the property at issue,
32              that being 4734 Franklin Avenue at a
```

1        Sheriff's Sale.  Money was exchanged for

2        this piece of property.

3            What is in dispute, as I appreciate

4        the Federal Court Pleading, is the manner

5        in which Mr. Perret, or representatives of

6        JB 430 Holdings went in to take possession

7        from Mr. Swafford of the property.

8        Allegations relative to violations of

9        Civil Rights, actions of the police were

10       unwarranted, or somehow violated Civil

11       Rights, warrantless searches and seizures,

12       the Sheriff Sale violated Civil Rights,

13       but there's no allegation that the Sale

14       itself did not occur, or there's no

15       question regarding the validity of the

16       sale.  When a party transacts to purchase

17       something, as in this particular case, and

18       remits the sums requested for sale, a

19       transaction has occurred, and there is

20       ownership that enures to the purchaser or

21       the person, you know, gives over the

22       money.  Yeah, there maybe some paperwork

23       that has to take place in the background

24       that the parties have no control over, but

25       a sale has occurred.  And neither party

26       disputes that this transaction occurred.

27 MR. KLEIN:

28        I do.  No, I dispute vehemently that

29       a sale took place.  I dispute vehemently

30       that title transferred as a consequence of

31       this man going upstairs and dropping of

32       $280,000.  But I thought I heard, your

```
 1            Honor say that you don't have jurisdiction
 2            to decide the issue of ownership?
 3   THE COURT:
 4            I don't.  I don't. I don't have
 5            jurisdiction regarding issues of
 6            ownership, but you have not -- there is no
 7            allegation that this sale didn't occur,
 8            that this sale --
 9   MR. KLEIN:
10            The whole thing says that there was
11            not a legitimate transfer of title.  You
12            want me to amend to say that?  I can't see
13            how, your Honor believes that there is no
14            dispute that a sale took place.  If you
15            look --
16   THE COURT:
17            Listen there is no dispute because I
18            have the receipts here.  I have what you
19            provided in terms of JB 430 Holdings
20            remitting $252,100 to the Orleans Parish
21            Sheriff.  I have your own statement in the
22            beginning of this proceeding that that is,
23            in fact, what occurred.  So, yeah there is
24            no dispute that this transaction took
25            place.
26   MR. KLEIN:
27            The Code Articles on the sale of --
28   THE COURT:
29            All you're arguing is that the
30            paperwork hasn't gone through the
31            Conveyance Office.
32   MR. KLEIN:
```

```
1              No, no, no, no.  I'm arguing that
2         there has not been a sale of a piece of
3         property pursuant to the Record Doctrine.
4         Before you have a sale, you've got to
5         comply with the Code Articles on what a
6         sale is.  Let me say this:  Mr. Swafford
7         did not sell this piece of property to
8         Mr. Perret.  That's the typical sale where
9         --
10  THE COURT:
11              It was foreclosed on, correct?
12  MR. KLEIN:
13              That's an involuntary action.
14  THE COURT:
15              Is that correct?
16  MR. KLEIN:
17              It was foreclosed on.
18  THE COURT:
19              Okay.
20  MR. KLEIN:
21              And so what I said was correct.
22  THE COURT:
23              And no action has been filed relative
24         to the foreclosure?
25  MR. KLEIN:
26              Judge, I got hired and within one day
27         I did what I did.  Mr. Perret -- Mr.
28         Swafford had filed pleadings in the
29         District Court regarding his objections to
30         the foreclosure, so it is not true that
31         nothing has been filed.  A lot had been
32         filed.  As a matter of fact, the day
```

1    before the foreclosure sale took place

2    there was a hearing before Judge Hazeur

3    regarding what Mr. Swafford believed was

4    improper about the transactions.  There

5    was not a sale.

6  THE COURT:

7    All I have is your Federal Court

8    pleadings here, sir, that's what you

9    filed.  That's what you filed.  And as the

10    basis of your motion for a new trial here

11    today.

12  MR. KLEIN:

13    My motion for a new trial was that

14    okay -- that you were defrauded by having

15    somebody come in and say that I own the

16    property.  That's not, that didn't happen.

17    He doesn't own the property.  But as I

18    see, you know, the handwriting on the wall

19    --

20  THE COURT:

21    In the second paragraph you say,

22    After a Sheriff's Sale was conducted to

23    enforce a mortgage held by Graystar as to

24    Swaffords' private residence at 4734.

25  MR. KLEIN:

26    That did happen.  But the

27    consequences, the legal consequences of

28    the facts that you have before it, do not

29    equal a sale.

30  THE COURT:

31    Okay.  I'm going to -- I don't think

32    there is an issue relative to transaction

1        of sale as having occurred.  Mr. Klein,

2        you're quite welcome to appeal my ruling.

3        I mean, normally, I don't have -- I mean,

4        these are pretty routine sort of kinds of

5        --

6 MR. KLEIN:

7        Well, if you don't have jurisdiction,

8        your Honor to declare ownership --

9 THE COURT:

10        But when somebody comes in to prove

11        ownership, then there is no question of

12        ownership.  I don't have a question.

13 MR. KLEIN:

14        You don't have jurisdiction.

15 THE COURT:

16        I don't have a question about

17        ownership.

18 MR. KLEIN:

19        You don't?  You think that I have

20        conceded?

21 THE COURT:

22        I don't think you've conceded, but I

23        don't have a question.  So, if you believe

24        that my determination that what has been

25        presented before me evidences ownership of

26        the property, then you can go ahead an

27        appeal that to the Fourth Circuit.  Okay,

28        if you don't believe --

29 MR. KLEIN:

30        But where does it go from here,

31        because I don't do this very often?

32 THE COURT:

```
1                    Fourth Circuit.  And you have to look
2              at the rules for First City Court because
3              our rules -- our delays are different then
4              District Court.  So, if you believe I'm
5              incorrect --
6    MR. KLEIN:
7                    So what did you rule?
8    THE COURT:
9                    I did vacate the original judgment,
10             but I am just to allow you all to argue
11             this point, but I am reinstating my
12             ruling.  Judgment for the Plaintiff,
13             JB 430 Holdings; Rule absolute.
14   MR. KLEIN:
15                   So, he gets to go this afternoon or
16             what?  Can we Stay it for week?
17   MR. PFISTER:
18                   Judge, we'd like you to set a date
19             when he needs to vacate the premises.
20   THE COURT:
21                   Well, --
22   MR. KLEIN:
23                   He's not destroying it, how about 15
24             days, that's not the end of the world.
25   MR. PFISTER:
26                   Judge, --
27   THE COURT:
28                   Typically not the end of the world,
29        no.
30   MR. PFISTER:
31                   Judge, it's already been 21.
32   THE COURT:
```

```
1              I understand.  I understand.  I
2         understand.  This is the 14th.
3   MR. KLEIN:
4              15th.
5   THE COURT:
6              Lets do this Counsel.  And what I'm
7         hearing perhaps from Mr. Klein, I don't
8         know, it sounds like maybe his client is
9         going to vacate, whenever the date is set.
10        Why don't we do this.  Actually, it would
11        be through the 1st of September.  I mean,
12        Labor Day is the 2nd.  And this would be
13        Executory on the 3rd.  Judgment Executory
14        on the 3rd of September.
15  MR. PFISTER:
16             Judge, so that I understand.  Your
17        order is that Mr. Swafford vacate by
18        September 3rd?
19  MR. KLEIN:
20             Her order is reinstating the original
21        rule.
22  THE COURT:
23             Rule absolute.
24  MR. KLEIN:
25             Absolute.
26  THE COURT:
27             Well, let me retract that.  Since
28        your asking for more time, it's not
29        necessarily absolute, okay.  We're going
30        to make an Executory date if that is
31        something that's acceptable, okay?
32  MR. KLEIN:
```

```
 1              That's fine.
 2   THE COURT:
 3              I think it's reasonable, okay, under
 4         the circumstances.
 5   MR. PFISTER:
 6              So, if I understand your Honor's
 7         ruling --
 8   THE COURT:
 9              He has through Labor Day.  And the
10         first oppertunity that your client would
11         have to execute if the party is not out
12         would be the day after, which would be the
13         3rd.  That's the Executory date,
14         September 3rd.
15   MR. KLEIN:
16              So can you get a Judgment to her so I
17         can -- Notice my intention to apply for
18         Writs.  I'm going to do that.
19   THE COURT:
20              Check the rules on First City Court.
21         I understand.  Okay.  I don't if a Writ is
22         necessarily the way.  It maybe a straight
23         appeal, but you gotta to decide that
24         yourself.  Okay.  But --
25   MR. KLEIN:
26              I'll do that.  I went to law school.
27   THE COURT:
28              I know you did, a long time ago.  You
29         know more than I do Mr. Klein.  Okay.  But
30         if you can get me a Judgment by tomorrow I
31         would appreciate it.
32   MR. PFISTER:
```

1        Yes.

2   THE COURT:

3        And have Mr. Klein to look at it.

4   MR. PFISTER:

5        Absolutely.

6   THE COURT:

7        And fax it to him.  You're going to

8   be available either this afternoon or

9   tomorrow morning to look at the Judgment,

10  so that I can get it tomorrow?  I'm duty.

11  I'll be here.

12  MR. KLEIN:

13       I'm sure you remember, your Honor, I

14  work all the time.

15  THE COURT:

16       Very good.

17  MR. PFISTER:

18       Your Honor, the Conveyance Office, I

19  think, has the deed, but won't release it.

20  MR. KLEIN:

21       What?  The Conveyance Office has a

22  deed?

23  MR. PFISTER:

24       We just tried to pick it up.

25  THE COURT:

26       Okay.

27  MR. PFISTER:

28       For whatever reason they won't --

29  MR. PERRET:

30       Can I talk?

31  THE COURT:

32       Has he been sworn in?  Swear him in.

```
 1   (Mr. Perret the plaintiff was duly sworn.)
 2   MR. KLEIN:
 3              Well, do I get to cross examine him?
 4   THE COURT:
 5              Well, he's just making a statement
 6         that's all. I've already ruled. I've
 7         already ruled.
 8   MR. PERRET:
 9              I usually work with Ms. Elizabeth or
10         Ms. Brandy. Ms. Brandy had said that it
11         would have been ready on Monday. I went
12         to go pick it up today, and she said
13         they're holding it because of the Federal
14         --
15   MR. KLEIN:
16              Sure. They don't have the right to
17         do it.
18   MR. PERRET:
19              They had already paid off the taxes
20         and they're ready to go.
21   MR. KLEIN:
22              Your Honor, the Federal Rules are
23         very clear and, you know, I know where to
24         go and do what I have to do. You're honor
25         has ruled.
26   THE COURT:
27              I can't do anything about that. I've
28         ruled. I'm not quite sure where that puts
29         you, in terms of what I've decided here,
30         but get me Judgment, and once the Judgment
31         comes in, then I'll --
32   MR. KLEIN:
```

```
 1              Well, the Judgment will be the
 2         Judgment that's rendered.
 3  MR. PFISTER:
 4              I will, your Honor.
 5  THE COURT:
 6              Right.  He's going to get me a
 7         written Judgment tomorrow.
 8  MR. PFISTER:
 9              Correct, yes.
10  MR. KLEIN:
11              And pass it by me.
12  THE COURT:
13              And you'd like me to copy these
14         things?
15  MR. PFISTER:
16              Yeah, Judge I'd like to introduce
17         that into the record.
18  THE COURT:
19              Okay.  In globo, as Exhibit 1.
20  MR. KLEIN:
21              Do you have a copy for me?
22  MR. PFISTER:
23              I only have one copy.
24  THE COURT:
25              Lets see what we have.  You have a
26         lot of copies.  Are these duplicate copies
27         of things?
28  MR. PFISTER:
29              Only really the first one.
30  THE COURT:
31              You got something on July 25, 26,
32         here.  This is the 26th.  It's the same
```

```
 1          thing as --
 2  MR. PERRET:
 3              Yeah, some of it was just in the same
 4          folders.
 5  THE COURT:
 6              Okay.  This is something you paid
 7          upstairs, so, it's just two documents,
 8          actually.  You can take a look at it.
 9  MR. KLEIN:
10              Whatever he introduces, just give me
11          a copy.
12  MR. PFISTER:
13              Absolutely.
14  MR. KLEIN:
15              May I go?
16  THE COURT:
17              Okay.  Yes, you can.
18  MR. KLEIN:
19              Thank you, Your Honor.
20  (Whereupon the proceeding was concluded.)
21
22
23
24
25
26
27
28
29
30
31
32
```

```
1               Reporter's Certificate
2
3   This certificate is valid only for a transcript
4   accompanied by my original signature and original
5   required seal on this page.
6
7   I, Harold M. Spinner III, Official Court Reporter in
8   and for the State of Louisiana, employed as an
9   official court reporter by the First City Court for
10  the State of Louisiana, as the officer before whom
11  this testimony was taken, do hereby certify that this
12  testimony was reported by me in the stenotype
13  reporting method, was prepared and transcribed by me
14  or under my direction and supervision, and is a true
15  and correct transcript to the best of my ability and
16  understanding; that the transcript has been prepared
17  in compliance with transcript format guidelines
18  required by statute or by rules of the board or by
19  the Supreme Court of Louisiana, and that I am not
20  related to counsel or to the parties herein nor am I
21  otherwise interested in the outcome of this matter.
22
23
24
25
26
27            Harold M. Spinner III, RPR, CCR
28            Registered Professional Reporter
29            Certified Court Reporter
30
31
32
```